STEWART ET AL., RESPONDENTS, v. ARROW CREEK DE-
VELOPMENT Co., APPELLANT.

(No. 5,048.)

(Submitted January 25, 1923. Decided February 21, 1923.)

[212 Pac. 1107.]

*Contracts of Employment—Geologists—Professional Services—
Evidence—Letters—Mail—Presumptions.*

Evidence—Letters—Mail—Presumptions.
>    1. Where an envelope containing a letter the contents of which
> were proved by a carbon copy without objection, was correctly ad-
> dressed, properly stamped and deposited in the postoffice, the pre-
> sumption obtains that the addressee received it and was aware of its
> contents.

Contract of Employment—Geologists—Professional Services—Evidence—
Sufficiency.
>    2. In an action by a firm of geologists to recover for professional
> services, *held* that the contention of defendant that the services
> were performed by subordinates and not, as contemplated by the
> contract of employment, by themselves, is not borne out by the evi-
> dence, and that the verdict in plaintiff's favor was not contrary to
> the court's instructions.

*Appeals from District Court, Fergus County; Rudolph Von
Tobel, Judge.*

ACTION by I. E. Stewart and F. S. Wright, doing business
under the firm name of Stewart & Wright, against the Arrow
Creek Development Company, a corporation. From the judg-
ment for plaintiffs and an order denying a new trial, defend-
ant appeals. Affirmed.

*Messrs. Belden & De Kalb* and *Mr. Merle C. Groene,* for
Appellant, submitted a brief; *Mr. H. Leonard De Kalb* and
*Mr. Groene* argued the cause orally.

The plaintiffs are seeking to recover upon a contract em-
ploying them as geologists to render professional services, by
proof showing that they had delegated this work to subordi-

---

1. Presumption of receipt of letter, see notes in **Ann. Cas.** 1917E,
1058, 1072; **Ann. Cas.** 1918E, 510.

nates; and the proof showing that the professional services in fact were not rendered by the plaintiffs but by subordinates, we respectfully submit that there was a total failure of proof in this respect.

The rule is laid down in 26 Cyc. 1024: "It follows that a servant cannot without the consent of his master, substitute another in his place to perform his services irrespective of the ability or capacity of the substitute." (*Maitrejen* v. *N. O. Railway & Light Co.*, 120 La. 1056, 46 South. 21; *Harriston* v. *Sale*, 14 Miss. 634.) The same essential principle lies at the base of the rule forbidding the assignment of contracts involving personal skill. Thus, where an employer or a contracting party contracts with another on the strength of the personal credit, responsibility or peculiar fitness of the other party, the party with whom he contracts is held to have no right to assign the burdens and privileges of the contract. (*Demarest* v. *Dunton Lumber Co.*, 151 Fed. 508; *Warner* v. *Martin*, 52 U. S. 209, 13 L. Ed. 667 [see, also, Rose's U. S. Notes] ; *Fairchild* v. *King*, 102 Cal. 320, 36 Pac. 649; *Underwood* v. *Birdsell*, 6 Mont. 142, 9 Pac. 922; *Fargo* v. *Cravens*, 9 S. D. 646, 70 N. W. 1053; *Sorenson* v. *Smith*, 65 Or. 78, 51 L. R. A. (n. s.) 612, 129 Pac. 757 [see, also, Rose's U. S. Notes]. Even leases or contracts to work farms on shares are within this class. (*Litka* v. *Wilcox*, 39 Mich. 94; *Randall* v. *Chubb*, 46 Mich. 311, 41 Am. Rep. 165, 9 N. W. 429; *Lewis* v. *Sheldon*, 103 Mich. 102, 61 N. W. 269.)

This court, in *Stokes* v. *Long*, 52 Mont. 470, 159 Pac. 28, makes an observation as to the duty of a professional man under his general contract to render professional service; in that instance a physician. The court, speaking of where two physicians had been hired to perform the same service, says: "Each is bound to bring to the case the ordinary knowledge and skill of the profession, and also to give his best personal attention and care." The court declares that one of the physicians could not rely upon the other; and that the nature of his employment was such that he was to bring to bear his own personal skill, care and attention.

We cite to the court the following further authorities: *Iaege* v. *Bassieux,* 15 Gratt. (Va.) 83, 76 Am. Dec. 189; *Smith* v. *Hubbard,* 85 Tenn. 306, 2 S. W. 569; *Dougherty* v. *Grouff,* 23 Neb. 105, 36 N. W. 351; *Stott* v. *Franey,* 20 Or. 410, 23 Am. St. Rep. 132, 26 Pac. 271.

*Mr. C. J. Dousman,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

The complaint alleges that the plaintiffs rendered "professional services" and furnished supplies of the reasonable value of $2,275.73, at the special instance and request of the defendant. These averments the answer denies. As a "separate and further defense and cross-complaint," it is alleged that "the plaintiffs are engaged in the profession of mapping, surveying and reporting the value of prospective mineral lands and are geologists"; that through F. S. Wright, the defendant employed the plaintiffs to examine and report upon certain oil and gas lands held by it under lease for a maximum charge of $1,400; that in no event was the cost and expense of the doing of any of the work to exceed that sum; that the expense so incurred "should be borne by the plaintiffs" at the maximum cost to defendant of the sum stated; that plaintiffs agreed to do the work and to treat "any and all information obtained in the doing and performing" of the work strictly confidential and private; that they entered upon the performance of the contract, and contrary to its terms plaintiffs "disclosed and communicated to divers and sundry persons, other than members of the board of directors of the defendant, information concerning the structure and territory" upon which the work was to be done, to its damage in the sum of $2,500; that in violation of the agreement the plaintiffs "did not devote their personal skill and experience" to the work and by reason of their lack of attention, incompetency, and negligence the results were utterly valueless to the defendant for any purpose; that defendant, at the request of plain-

tiffs, provided transportation for the men employed in the work at an expense of $551.25, no part of which has been paid. The prayer is for judgment for $1,651.25 in its favor. The replication denies all the affirmative allegations of the answer. Upon a trial of the issues thus framed a verdict was returned for the plaintiffs in the sum prayed for. From the judgment and an order denying a new trial the defendant appeals.

In its three specifications of error, defendant insists that the verdict is against law because the jury failed to follow one of the court's instructions; and that in overruling the defendant's objection "to all evidence showing that the work was done by subordinates and not by the plaintiffs personally" error was committed. The questions to be answered on this appeal are stated by defendant's counsel thus:

"(1) Whether or not plaintiffs performed the professional services made the basis of their claim.

"(2) Whether or not they had an agreement whereby they became entitled to the exact sum sued for.

"The latter question alone presents a question of fact. The first is fundamental."

The evidence discloses that plaintiffs are geologists, and the fact that Wright was the member of the partnership with whom the agreement was had; that the firm undertook to survey territory under lease by defendant and to determine "whether there was a structure supposed to contain oil and gas, and, if so, to map it"; that Wright advised Melton, the president of the defendant company, that their charges would be $100 per day for the first ten days, and $50 per day thereafter, plus expenses. No time was set within which the work was to be completed.

Defendant's counsel seriously urge that plaintiffs did not make out their case, because the evidence shows that Messrs. Hunt & Klingaman, instead of one or both the individual members of the firm, performed the services for which claim is made, and that the agreement was not carried out according to the understanding of the parties. The plaintiff Wright

66 Mont.—16

testified to the making of the contract as follows: "Q. Do you know whether Mr. Melton knew whether the work was to be done by you personally or whether it was to be done by a party? A. Yes, I know that he knew it from the arrangements I made with him, the discussion I had with him, and also from the letter I had written Mr. Melton before the work was commenced. I sent that letter to Mr. Melton. I couldn't state whether he received it or not, because Mr. Melton never answered my letters. I know it was mailed to him. I kept a copy of the letter. I have not seen the original of it since that time; it never was returned to me." The original letter [1] so written was called for by notice to produce given to defendant. Upon the statement of defendant's counsel that they were unable to produce the original, a carbon copy thereof was admitted without objection. The reference to the subject matter in the letter mentioned by Mr. Wright is as follows: "On returning to Lewistown I had made all arrangements so that we will have a party ready to put in the field for you as soon as weather conditions permit." The attention of Mr. Melton was called to the letter while he was on the witness stand for the defendant. He did not deny receiving it, but stated that if it was received he had forgotten it. This evidence of the contents of the letter and the fact that an envelope, correctly addressed and properly stamped, inclosing it, was deposited in the postoffice, are sufficient to warrant the presumption that he received the letter in due course of mail and was aware of its contents. (*Lingquist* v. *Loble,* 62 Mont. 162, 204 Pac. 170.) Upon the question whether the expenses incidental to the contract were to be paid by the defendant or by the plaintiffs, Mr. Wright's testimony is: "Q. Was anything said about expenses at the time you entered into the contract for this work? A. Yes, sir; $100 a day and expenses for the first 10 days, and $50 a day and expenses each day thereafter and all expenses." There was also introduced in evidence, properly identified, itemized accounts of the expenses incurred in and about the doing of the work. The secretary of the defendant company testified that

bills were rendered to the company by Mr. Jensen, the man who drove the automobile which carried the men engaged in the work, to and from the field; that on behalf of the company he paid the bills presented "in two or three amounts." Although he did, as he claims, charge the bills up to the account of Stewart & Wright on the company's books, he did not advise the plaintiffs that he had done so. The finding of the jury upon this issue was amply supported by the evidence and should not be disturbed.

The defendant's argument upon the contention that the [2] plaintiffs did not carry out their agreement as it was understood by it and that the verdict of the jury did not respond to the court's charge upon that issue, is answered by instruction No. 2 itself, which was given without objection. As appears by its language, the jury were therein told that—"The defendant was not bound to accept the work of subordinates except in so far as said work, or some part thereof, may not have required the knowledge and experience of skilled geologists."

Upon the evidence above set out and the additional proof that Mr. Wright accompanied Messrs. Hunt and Klingaman upon their first trip to the field, remained with them for several days, assisted them in "plane tabling the structure," advised with them in relation thereto, and gave them full benefit of his knowledge as a geologist, the verdict was for the plaintiffs. The testimony given by the witnesses on the other side was considered and weighed against it. The jury's estimate of all the facts is reflected in the verdict.

There being presented to this court no question of law which could or did affect the finding of the jury, the judgment and order appealed from are affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Holloway, Galen and Stark concur.